you may please the court. My name is Michael Fox and I represent plaintiff and appellant Daneshea Montana Cordoba, who seeks to vindicate violations of her constitutional rights. If I may, I'd like to reserve two minutes for rebuttal. Thank you, Your Honor. The district court erroneously granted summary judgment to the defendants, notwithstanding several genuine issues and material fact on all the outstanding claims in the judgment of the district court must be reversed. As to the claim against Detective Shirashi, she deliberately recorded a false arrest time, which could only be considered valid with a wink and a nod, as was acknowledged by the district court. The falsified arrest time was indeed approximate cause of plaintiff's harm, both cause in fact and proximate cause. There could be no dispute that this started a chain of events, a foreseeable chain of events that led to interference with the plaintiff's interference was deliberate or at least recklessly indifferent. Help me out again. Yes, Your Honor. What exactly is it that was falsified? Two things, Your Honor. Actually, one is the arrest time. The 501 arrest time, meaning booking the arrest time 501 p.m. On a Friday evening or afternoon automatically triggered 72 hours of extra detention time, which was the actual arrest time. According to the plaintiff, she was arrested sometime earlier that afternoon. She believed it to be closer to four o'clock. There's evidence in the record that it was probably closer that it could have been at 2 40 as early as 2 40. And the consequence of 501 means that she's held over the weekend. Help me understand how that two things. One she's held over the weekend because 48 hours you exclude the weekend time because it's at 501 p.m. There's a whole additional day that gets triggered as well. So, but the weekend would have happened 23 hours and 59 minutes. The weekend would have happened in any event. The weekend would have happened in any event. And so, but so what you're talking about falsification is, uh, an additional 45 minutes. Roughly speaking, is that what we're talking about? No, it's results and actually an extra 23 hours. No, I'm talking about the falsification is in the range of two hours and 20 minutes to an hour, possibly less. But there's evidence that there she was detained, told not to go anywhere, placed by officers, told not to leave. And her booking time is not recorded until her booking time is then recorded as 501 p.m. as the time of arrest. And that's critical in this fast moving situation where you have a parent who is a child that she needs to find care for, and that she immediately starts to try and take care for. And her ability to do that is thwarted by Detective Harasher. Rashi, but you're not arguing the falsification by itself was a constitutional violation, right? Of course not, Your Honor. It's one of a series of constitutional violations or a series of acts that result. Why is it? Of course not. It seems no, I'm saying there's more than one. That's one. It's conscious, shocking, and the district court found that first. There's plenty of other. Sorry, but the overlong detention by itself is not your constitutional claim, though. Your constitutional claim is the interference with the family. But as to Detective Shirashi, it's interference with the family rights, which is caused in part by the overt detention. There's a series of events which occurred which interfered with the parental rights, starting with falsifying the arrest time, then getting into the issues of whether Detective Shirashi was honest with C. F. S. And plaintiff and Judge Hinton, the judge, about the reason for, um, the child having to be placed in custody on that Friday evening. Let me let me ask you questions. As I understand from what you briefed, there are I'm having a problem. Same thing with the connection between the violations. And there may be issues, in fact, concerning the violations. I don't really know that they're undisputed. But it seems to me that you're first arguing that that Shirashi misled your client about how the child would be cared for. That's the first one, right? That is it. And so that is the one first one, at least, that relates to the fundamental right of family association and then failing to notify your client that the boy had been turned over to C. F. S. And then third is the failing to tell C. S. F. About her attempt to try to get a child. And then the next issue, which is the more important issue to me, is whether or not qualified immunity applies. I don't see anything or haven't seen anything that you have given me, given us to establish that there were the law was there was existing authority to establish that this was all four of these alleged violations were wrong. Well, there's sort of the answer to your question and emerges here because, in fact, there are 123455 sections of the California Welfare and Institutions Code which governed Detective Shirashi's conduct in this instance in which he violated in a number of ways. So that answers the question of how is there interference with something here? Is it related to the fundamental right to association with a child? Are you talking about that? It leads to an interference with the parental rights with the Welfare and Institution Code sections acknowledge and have as part of their codified California law on this issue. There are provisions in the law which we cited which require the police officer in this instance to determine whether there's a way for a family member for a parent toe to make arrangements for the child. Are you saying it's undisputed that she did not? I didn't see that in the records and undisputed. She did make an effort. She did find somebody. The plaintiff gave the plate Judge Silver. The plaintiff gave Detective Shirashi two names. One name. There was immediate fear that she shouldn't go with that person. Detective Shirashi then went to the second name, Michael Caldwell, and there were efforts by Mr Caldwell to even come to the station and come to pick up the plaintiff's son, which Detective Shirashi interfered with. So at this instance, wait, why did is the evidence clear that? And why did the judge find it that the that Shirashi actually did interfere? I don't see that in the record. Well, what the judge did is she started weighing the evidence and you see this in detective. What evidence? What evidence shows interference? What evidence shows interference? She weighed the evidence of Michael Caldwell's testimony about how he was being persuaded or how he felt persuaded not to come to the station and pick up the child. And you had Dr Detective Shirashi saying that she was not likely to give him anyway. So you have disputed issues of fact right there that should have prevented summary judgment. And in fact, it's the fact that we know this is it's in Detective Shirashi's brief or she repeatedly says that none of our evidence is persuasive enough. Well, that's for a jury to decide. It's not for a district court judge to decide on summary judgment. If the issue here is whether any of these acts, any of these, um, actions, statements, records raise any issues of fact, it's for a jury to resolve, not it's not. It's not Mr Caldwell's right, and she could not have taken, uh, control of this child. You could not have taken control of the child except for is recognized by the statutes which allow her to direct his care if she can. And she's right next door down the hall. All Mr Caldwell apparently can't show up. It's not as if plaintiff had already been moved off site to another jailhouse. But in fact, another falsified record. Okay, the judge placed that the judge placed the child with a great aunt. Is that right? So the child wasn't. It wasn't as if the day your client was somehow precluded from any association because she was she was incarcerated at the time, and the child was eventually placed with a family member. He was placed with a family member without the plaintiff's knowledge or control to what she was entitled and to under some under some of the statutes which we've cited and she was not. What statue have you cited that shows that she was entitled to make that decision? He was entitled to be have to. She was entitled to give some direction, and she was entitled to be notified of who the both of those by Detective Shirashi on that Friday night. And then we have a court hearing in front of Judge Hinton five days later, in which Judge Hinton assumes that plaintiff at that point can't even get out of jail to take care of her child that debt. So you do have an interference with the constitutional familiar right there that starts on Friday night and ends at the hearing. Now, since the child was adequately placed with a with a great-aunt, where is the violation to your client? Just as simply as possible, where was the violation to your client? He was deprived of her ability to have a say in that decision completely, starting with Friday night when she was deceived by Detective Hirashi or recklessly ignored by Detective Shirashi, leading up to the sitting there in the courtroom in shackles, thinking that she's still facing charges. And that's where we get to the violation of the interference with the familiar right. She, the child, has already been placed with someone to whom she had no control over, had no say over, and wasn't told about. And you're telling me that there is California case law that provides as a matter of law that she had the right, the unequivocal right, to make this decision? She did not have the unequivocal right to make the decision. She had the right to have a say in the decision, to have input into the decision, to be told what was going on, and for records not to be falsified about it. Critical, there's a record in the case that shows that CFS was told that the parent couldn't make, couldn't make arrangements for the child. That's not true. She made two efforts to make arrangements for the child, and she was right down the hall and able to be consulted, perhaps again. And she wasn't told until she hears for the first time in her meeting with CFS two days later on Monday. But she was incarcerated? When she was incarcerated. Right. And again... Are you saying that the the familiar right violation occurred on Friday night when she, when Shirashi didn't let the child go to Caldwell? It was completed at that point? Or did it take the court to place custody in the, I think, great aunt on Wednesday? I think it's a series of which is a fault. These are tribal issues, but even if there's an issue with the arrest time, there's at least a period of time from Tuesday until Wednesday when the right was interfered with solely because of the arrest time. If you add in these other factors about not being candid with the plaintiff, not trying to ascertain her wishes or whether she can make arrangements, and not clearing up the record, and letting CFS know, who by the way had difficulty finding plaintiff in jail, letting CFS know that charges are not going to be brought, which Shirashi knows, that leads to the bigger issues of interference that may extend beyond the date of Judge Hinton's opinion. So tell me how you can overcome qualified immunity. You started to talk about that. Yes, Your Honor. Qualified immunity, one, based on the statutes that I mentioned. Second, based on... And those statutes, summarize them for me. The statutes, as I as I have summarized them for you already, I believe, say there are notification procedures by which the parent needs to be notified. The parent has to have no ability to place the child. And there are record keeping procedures. So she had the ability to place the child? There was no question that Shirashi did attempt to talk to, or she was met by Mr. Caldwell, right? So where's the no ability? No ability is, she didn't go to, she did not, she did not go to the plaintiff and tell her that Caldwell wasn't coming to get him. Had plaintiff, as of Monday morning, the plaintiff was under the belief that Caldwell had had the child for 48 hours, which is also a violation of the statutes in which the parent is supposed to be notified about where the child is. Is there case law, is there case law interpreting those statutes you're relying on, that make it clear that if there was existing authority? There's not necessarily case law about what those statutes say plainly on their face. But Wallace v. Spencer says unwarranted interference or removal of children from a parent's custody, which in part is what occurred here, is an unconstitutional infringement on the plaintiff's 14th Amendment rights. And Detective Shirashi therefore had statutory and constitutional obligation to provide for plaintiff's son's care with plaintiff's, some of plaintiff's consent, some of plaintiff's input, giving plaintiff knowledge and her knowledge of that. Detective Shirashi obviously knows some of this because she's trying to skirt the rules as that's happening. I know we're into some of my rebuttal time, so I think I'll wait. Thank you, Your Honor. Good morning, Your Honors. May it please the Court, Ashley Thomas on behalf of Detective Shirashi from the Richmond Police Department. The District Court correctly granted summary judgment in favor of Detective Shirashi on two independent bases. First, that none of the purported conduct of Detective Shirashi was conscience-shocking. And second, because Detective Shirashi is entitled to address the allegedly... Why is it, why is the standard conscience-shocking? This is, you agree this is a fundamental right? This is... That family autonomy, which would be as it's been defined in this case, that is family association, is a fundamental right. The 14th Amendment case law on the removal of children from their parents apply that conscience-shocking deliberate indifference standard. We see that... Are you saying, what case law are you relying on? Federal, state? Federal case law. Federal case law. Say it has to be conscience-shocking as opposed to deliberate indifference? I believe that the case law actually describes deliberate indifference as a subset of conscience-shocking. Okay, so it starts with deliberate indifference. Correct, Your Honor. Okay, conscience- shocking is something else, though. You agree? It is. My understanding of the case law is that conscience-shocking is the overarching standard and that you have the deliberate indifference and the purpose to harm standard and those are applied based on whether or not the government official had the ability to deliberate on the actions that they were going to take. So because Detective Shirashi did not make this second, this decision in a split second, the deliberate indifference standard as opposed to the purpose to harm standard would apply. The purportedly incorrect arrest time in this case is not material to the outcome of the summary judgment motion and this is why. Because regardless of whether or not Montana Cordova was getting out of jail on Tuesday or on Wednesday, the minor child had no appropriate caregiver on Friday evening. Thus, Montana... Help me out with just the factual narrative. I understand that we went through the two and for one reason or another neither one was able to or did show up. How did the aunt come to the attention of the detective and how was that contact made? I do not believe the detective made contact with the great aunt. My understanding of the case is that Detective Shirashi called Child and Family Services and then another officer with the Richmond Police Department took the child to Child and Family Services and Child and Family Services made contact with the great aunt and placed him there. So as far as your client's concerned, she said, listen, neither of these two have showed up. We need somebody. Correct. Furthermore, it does not shock the conscience that Detective Shirashi was asking, in a very informal environment, investigative questions regarding the case against appellant. Appellant asserts that because Detective Shirashi asked questions of Michael Caldwell regarding the investigation, that that behavior was conscience-shocking and violated her right to associate with the child. But it is undisputed in the record that Michael Caldwell said he decided that he was not coming to get the child. He made that decision. It is also undisputed in the record that Michael Caldwell and Detective Shirashi did not meet face-to-face at the department and that he left the department prior to the act of posing those questions in a very informal environment does not rise to the level of deliberate indifference. It is not conscience-shocking. Can you tell me how, and it's undisputed, that the great aunt eventually took the child? Yes, Your Honor. How did that come about? Again, I believe CFS placed the child with the great aunt and then on subsequent occasions, and I believe it was in the record it was four subsequent occasions, the juvenile court decided that it was appropriate to maintain that placement. And I believe it's undisputed. Tell me if I'm wrong on this is that this is a very I believe it's undisputed that even after she was released, she didn't obtain custody. That is absolutely correct, Your Honor. The child was maintained in the custody of the great aunt by CFS and the juvenile court until the child was returned to the mother on January 7th, 2019. So it was a significant period of time that the juvenile court found it appropriate to as to why, on the record, she was not given custody even after she was released. At the initial hearing, we have an order from the juvenile court. The juvenile court order states just what they accepted into evidence, which was the social workers report. In the social workers report, there are multiple issues identified, not just the issue regarding the appellant being in custody. And then the October 27th, 2017 order, the order just sustained the the May 23rd, 2018 order found clear and convincing evidence concerning the minor child's welfare. And the June 1st, 2018 order generally kept that prior order in effect. And then, Your Honors, Detective Shirashi is clearly entitled to qualified immunity in this case. The two cases cited by appellants, Spencer and Wallace, are easily and readily distinguishable. In both of those cases, first and foremost, the parents could have maintained control of the child, but for the fact that the state interfered. In this case, it's not disputed that the appellant was in jail and could not maintain physical custody of the child. Furthermore, as the district court correctly decided, California Institution of Welfare Sections 305 can be read to indicate that the detective had to call CFS because the child was left unattended and there was no one else to care for the child. So, for those reasons... Is it undisputed that the father, I think, Mr. Williams... Yes. ...didn't take custody? It is undisputed that the parties agree Mr. Williams was not an appropriate caretaker for this child. There was a history of domestic violence, which the plaintiff communicated to the officer and the officer verified through criminal records. There was a long history of domestic violence and they were concerned about the welfare of the child, should he be placed with Mr. Williams. And, Your Honors, unless there are other questions, I see I am out of time. Thank you. Good morning. May it please the court. Patrick Hurley for Defendant and Appellee, Contra Costa County. Judgment for the county on the substantive due process claim should be affirmed because minimum due process was provided to the plaintiff in this case. There was also no evidence in the record relating to the county's custom policy or practice relating to the communication of no prosecution decisions. And there was no evidence presented to the district court of deliberate indifference by the county relating to that policy. Was there any evidence whatsoever that they offered that would create an issue of fact as to whether or not the county routinely detains arrestees for a maximum period of time? Did the plaintiffs offer anything to show this was a routine practice? That the county holds people in custody for the maximum amount of time under Section Penal Code 825. The evidence that was provided is that the, not on that specific issue, but the evidence that was when people are arrested that they are that the clock starts ticking essentially and that there is a procedure that's put in place that if the people are not arraigned within 48 hours of that time, then they are to be released. There was also evidence that if additional facts come to the county's information comes to the county's knowledge that they'll act on those. But what I'm really asking is did the plaintiff offer any evidence of this that this is a routine practice? The only evidence on that issue was offered by us in support of the summary judgment motion, which was that there's a procedure in place to make sure that people are released within that 48 hour period of time if they're not arraigned or if there's some reason why they shouldn't be released earlier than that. Was there anything offered that there should be a policy? I think the plaintiff is basically saying that there should be a policy that there is contact by the arresting agency immediately. The only evidence, actually the only evidence that was presented in the district court was that the plaintiff didn't know whether there was such a policy or practice. That's in the excerpts of record at 271. And that's undisputed from your point of view that there is no such policy? That there is no such, I'm sorry Your Honor. That there, that with respect to that policy, that there isn't a they don't routinely follow a policy where they keep somebody well beyond or up until the time when they're to be released according to the statute. The evidence in the record is that the policy is that, that is a final deadline so to speak. So they, if there's not if they're not arraigned before that time and if there's not some other evidence that comes to the county's attention that would lead them to release them, then they would be released at the end of that 48 hour period. Wasn't there an email from Officer Alonzo that said something about that we hold defendants for the full 72 hours? That was Sergeant Alonzo. He was a Richmond police officer police sergeant. And the email which the court found was inadmissible hearsay correctly just stated that there is, it was a vague reference to a policy or that there was standard procedure to hold people for 72 hours. But it's not clear what that procedure applied to or that he had any competency to make a determination about the county's policy. Why did Officer or Sergeant Alonzo say that then? Who is the email to? I believe the email is to a victim advocacy person that contacted him on behalf of the plaintiff. I actually have the email right here. So the email was to a woman named Tanika Gibbs who was advocating on behalf of the plaintiff and following up about essentially what happened with the CFS issue. And again this is hearsay. But it sounds like he's a representative of the police to victim representatives. Why wouldn't that be an authoritative statement of policy? Well, first of all, he's a Richmond police officer. He's not a county employee. He has no... What's the relationship between Richmond PD and the county? Richmond PD is just an incorporated city within the county limits. So there are I believe 19 cities within the county. And anyone who's arrested would be booked through the county jail. But he doesn't have any affiliation whatsoever with the county. Assuming these are these two policies with respect to what happened at the trial court level, what is the association with the fundamental right to family autonomy and association with family? Well, as I understand the claims the first claim for a violation of the 14th Amendment right to familial association is based on the alleged over-detention. And the second claim is also based on the same thing, which is that Ms. Montana Cordova was held in jail for one day too long. So the only claim as I understand it against the county is that there was this custom policy and practice of holding people too long, which is actually a restated claim. So that in her case, merely because they have this policy, it's always going to affect and in particular the plaintiff it's going to affect her ability to be with her children. Is that it? Well, I suppose any time someone's arrested it's going to affect their ability to be with their children. I mean, I'm trying to understand the connection as you do. As I understand it the issue is plaintiff claims that because she was held, well, because she was held in custody through Wednesday, if she had been released on a Tuesday that she would have been able to be at the hearing without being in custody, which she claims would have made a difference about the juvenile court's decisions. And this always is going to affect for any family member who has children, this is going to affect their fundamental right to association. Is that the issue? I believe that's the plaintiff's claim. Obviously, our argument is that any time someone's incarcerated that that's going to affect their ability to have an association with their children. It's a question of whether or not they're being incarcerated without minimum due process and we believe in this case that that's not the case. Unless the Court has any other questions I'm happy to submit. Thank you, Counsel. Mr. Fox, we'll give you two more minutes. I want to just try and address some of the issues which you raised with the Defendant's Counsel. Judge Fletcher, when you asked that they needed to find somebody on Friday night, there was a person you could have gone and asked. Detective Shirashi could have gone and asked who was still in the Richmond Police Department and they didn't bother to go down the hall and ask the plaintiff and tell her that Michael Caldwell either couldn't, wouldn't, or wasn't coming and was there anybody else for whom she could arrange his care and that's what those statutes obligated Detective Shirashi to do. As to Judge Silver, you were asking about whether there's a triable issue of conscious shocking behavior here. If the standard for deliberate indifference is met, and I think we've established some facts which at least raise a triable issue as to deliberate indifference Would you restate that for me so I understand better? I would just state that if we've met and we've showed some deliberate indifference which I believe there's at least a triable issue of fact as to whether or not Detective Shirashi was deliberately indifferent, then it shocks the conscience and therefore violates due process. What would go to the jury? What are the facts that the jury could find deliberate indifference? Recording the arrest time inaccurately not telling Shirashi that Caldwell couldn't take care of her son, not dissuading Caldwell from taking care of her son or for coming to the police station at all, not following up with CFS or the Sheriff's Department when she knew and had knowledge of facts that plaintiff, that CFS had trouble finding plaintiff and talking to plaintiff about a reasonable place to place her child. Is it your claim that the Great Aunt was not appropriate despite the fact the judge found or the CFS found the Great Aunt appropriate and also continued it? There's a triable issue of fact there. There's a triable issue of fact there, Your Honor. First whatever the decision that Judge Hinton made on that morning in that juvenile dependency hearing was colored by two important facts which nobody bothered to disabuse her of. The first was that the plaintiff was still in jail facing charges. The second and you'll remember this is a slightly hidden fact but we highlighted in our briefs Judge Hinton was also the one who had accepted Detective Shirashi's probable cause declaration. And so in Judge Hinton's mind, not only is plaintiff still in jail but she's also likely to be charged with the crime of the stabbing. And because she had seen the probable cause for arrest back on Saturday. So nobody starting with Detective Shirashi does anything to try and disabuse Judge Hinton or give her a full slate of facts which could have led to a different decision on that first date of dependency. I'll acknowledge that we have difficulty with a claim for familiar interference once a subsequent decision is made about dependency. But at the very least a jury should be determining whether or not that holding her one extra day in jail mattered. And there is a policy issue which I want to hopefully just address in a minute. And two, whether or not there's some familiar interference for that month following. Those are tribal issues at least that don't get the benefit of a superseding intervening cause that cuts off all liability despite all of this conduct which everyone seems to acknowledge in one shape or form there's a tribal issue of fact based on more than a mere scintilla of evidence. And just as to the policy real quick, Sergeant Lonzo states that there's this policy of over-detention in essence. And the county acknowledges that they have a policy of letting people wait in jail until their time expires. Even though the county here has three heads, all of which should be talking to each other and they decide not to talk to each other at all regarding Ms. Montano-Cadorba's status with regard to this alleged crime. And Sergeant Lonzo is admittedly an agent of the county. The county says we rely on the booking time. We rely on what the arresting officers say is the arrest time to start our clock. So they can't say we rely on you and if you said 5-0-1 we get to rely on it and then say no you're saying there's a policy here but you're not our agent. That doesn't work. This is at least, at the very least an issue that a jury should be deciding. Summary judgment was premature in this case. And we respectfully submit that it should be reversed. Thank you your honors. Thank you counsel and thank you for handling this case pro bono. And thank you counsel on both sides for a wonderful argument.
judges: FLETCHER, BUMATAY, Silver